**DESAI LAW FIRM, P.C.**
Aashish Y. Desai, Esq. (SBN 187394)
8001 Irvine Center Drive, Suite 1450
Irvine, CA 92618
Telephone: (949) 842-8948
Facsimile: (949) 271-4190
aashish@desai-law.com

C. Ryan Morgan
*Pro hac vice*
Florida Bar No. 15527
MORGAN & MORGAN, P.A.
20 N. Orange Avenue, Suite 1400
Orlando, FL 32801
Telephone: (407) 418-2069
Facsimile: (407) 245-3401
rmorgan@forthepeople.com
Attorneys for Solomon and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCY SOLOMON, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TEAM ADHOC, LLC, and EAST WEST BANK,<br><br>Defendants. | CASE NO.: 2:17-cv-3636-JAK-RAO<br><br>**NOTICE AND MOTION FOR APPROVAL OF SETTLEMENT AND PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES**<br><br><u>**HEARING SCHEDULE**</u><br><br>DATE: May 21, 2018<br>TIME: 8:30 a.m.<br>JUDGE: John A. Kronstadt |

Plaintiff, Darcy Solomon on behalf of himself and all others similarly situated, by and through the undersigned counsel, hereby gives notice of filing the attached Unopposed Motion for Approval of Settlement of FLSA Collective Action and Plaintiffs' Request for Attorneys' Fees currently set for hearing on May 21, 2018 at 8:30 a.m.

Respectfully submitted this 15th day of March, 2018.

MORGAN & MORGAN, P.A.

By:      /s/ C. Ryan Morgan
         C. Ryan Morgan
         Florida Bar No. 15527
         Pro hac vice
         Florida Bar No. 15527
         MORGAN & MORGAN, P.A.
         20 N. Orange Avenue, Suite 1400
         Orlando, FL 32801

         Aashish Y. Desai (SBN 187394)
         Adrianne De Castro (CA 238930)
         3200 Bristol Street, Ste. 650
         Costa Mesa, CA 92626
         Telephone: (949) 614-5830
         Facsimile: (949) 271-4190
         aashish@desai-law.com

**DESAI LAW FIRM, P.C.**
Aashish Y. Desai, Esq. (SBN 187394)
8001 Irvine Center Drive, Suite 1450
Irvine, CA 92618
Telephone:  (949) 842-8948
Facsimile:   (949) 271-4190
aashish@desai-law.com

C. Ryan Morgan
*Pro hac vice*
Florida Bar No. 15527
MORGAN & MORGAN, P.A.
20 N. Orange Avenue, Suite 1400
Orlando, FL 32801
Telephone: (407) 418-2069
Facsimile: (407) 245-3401
rmorgan@forthepeople.com
Attorneys for Solomon and the Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DARCY SOLOMON, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TEAM ADHOC, LLC and EAST WEST BANK, <br><br> Defendants. | CASE NO.: 2:17-cv-3636-JAK-RAO <br><br> **PLAINTIFF'S UNOPPOSED[1] MOTION FOR APPROVAL OF SETTLEMENT OF FLSA COLLECTIVE ACTION AND PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES** |

---

[1] Defendants do not oppose this motion and will file a subsequent notice of joinder indicating the same.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES............................................................................. ii

I. INTRODUCTION.................................................................................. 1

II. SUMMARY OF SETTLEMENT AGREEMENT ................................2

   A. Conditional certification for settlement purposes ............................ 2

   B. Amount of the settlement ................................................................ 3

      i. Amount of fund and individual awards.......................................3

      ii. Attorneys' fees, costs, and service award..................................5

   C. Releases .......................................................................................... 5

III. PROCEDURE AND GOVERNING LAW FOR APPROVAL OF SETTLEMENT AGREEMENT ...........................................................6

IV. AGREEMENT IS FAIR AND REASONABLE AND CONDITIONAL CERTIFICATION IS APPROPRIATE ........................................... 7

   A. Settlement is the product of arm's length negotiations and of a bona fide dispute................................................................................... 8

   B. Amount to the class is fair ............................................................. 9

   C. Due process considerations .......................................................... 11

   D. Conditional certification............................................................... 12

   E. Service Award............................................................................... 13

   F. Attorneys' Fees and costs ............................................................ 13

      i. Fees Expended ......................................................................... 14

      ii. Hourly Rates ........................................................................... 14

      iii. Costs ........................................................................................ 16

      iv. Multiplier ................................................................................. 16

V. CONCLUSION ................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Aguirre v. Genesis Logistics,*
    SACV 12-00687 (C.D. Cal. April 7, 2014)..........................................15

*Bravo De Rueda v. Alta Home Care,*
    Case No. 30-2011-00506932 (Orange County Superior Court Sept. 7, 2012)..15

*Cardenas v. McLane Foodservice, Inc.,*
    SACV 10-473 (C.D. Cal. Jan. 30, 2012) ............................................15

*Correa v. Sensa Products, LLC,*
    Case No. BC476808 (LA Superior Court Nov. 7, 2012)...................15

*Cotter v. Lyft, Inc.,*
    2016 WL 3561742, at *5 (N.D. Cal. June 23, 2016) ....................10, 11

*Cotton v. Hinton,*
    559 F. 2d 1326, 1330 (5th Cir. 1977)..........................................7

*Diaz v. Hillsborough Cty. Hosp. Auth.,*
    2000 WL 1682918, at *4 (M.D. Fla. Aug. 7, 2000................................7

*Garcia v. Gordon Trucking, Inc.,*
    2012 WL 5364575 at *11 (E.D. Cal. Oct. 31, 2012) .........................13

*Gharamsini v. Smile Brands, Inc.,*
    Case No. 30-2012-0061-9560 (Orange County Superior Court
    May 28, 2013) ..............................................................15

*Gonzalez v. Fallanghina, LLC,*
    2017 WL 1374582, *2 (N.D. Cal. April 17, 2017).........................6, 7

*Hamilton v. Frito-Lay, Inc.,*
    2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007)............................7

*In re Apollo Grp. Inc. Sec. Litig.,*
    No. CV 04–2147–PHX–JAT, 2012 WL 1378677 .............................17

*In re TracFone Unlimited Serv. Plan Litig.*,

   112 F. Supp. 3d at 1010..................................................................... 17

*Johnson, Aiston & Hunt v. Graulty*

   886 F.2d 268 (9th Cir. 1989)............................................................. 14

*Jordan v. Multnomah Cty.*,

   815 F.2d 1258 (9th Cir. 1987)........................................................... 15

*Lynn's Food Stores v. U.S. Dep't of Labor*,

   679 F.2d 1350, 1355 (11th Cir. 1982)............................................. 6, 9

*McNeal v. RCM Technologies (USA), Inc.*,

   2017 WL 2974918, * 1-2 (C.D. Cal. July 12, 2017)........................ 13

*Millan v. Cascade Water Servs. Inc.*,

   310 F.R.D. 593, 602-607 (E.D. Cal. 2015))................................... 6, 12

*Mutch v. AYCO Company*, Case No. 30-2012-00587900 (Orange County

   Superior Court May 12, 2014.......................................................... 15

*Otey v. CrowdFlower, Inc.*,

   2015 WL 6091741, *4 (N.D. Cal. Oct. 16, 2015).......................... 6, 7

*Paul, Johnson, Aiston & Hunt v. Graulty*,

   886 F.2d 268 (9th Cir. 1989)............................................................. 14

*Quezada v. Schneider Logistics Transloading & Distribution, Inc.*,

   2014 WL 12584436, *11 (C.D. Cal. May 12, 2014) ........................ 13

*Rodriguez v. West Publishing Corp.*,

   563 F.3d 948 (9th Cir. 2009)............................................................ 13

*Rutti v. Lojack Corp., Inc.*,

   2012 WL 3151077 (C.D. Cal. July 31, 2012) .................................. 15

*Thompson v. Costco Wholesale Corporation*,

   2017 WL 3840342, *2 (S.D. Cal. Sept. 1, 2017)............................... 6

*Van Vranken v. Atl. Richfield Co.*,

   901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................... 17

*Van Wingerden v. Cadiz, Inc.*,

   2017 WL 5565263, (C.D. Cal. Feb. 8, 2017).................................... 14, 15, 16, 17

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043 (9th Cir. 2002)......................................................................... 14, 16

**<u>Rules Statutes and Other Authorities</u>**

California Labor Code § 2699(i) ................................................................................ 4

Fair Labor Standards Act 29 U.S.C. §216(b)......................................................... 2, 6

Fair Labor Standards Act 29 U.S.C.§§201, *et seq* ................................................... 1

Plaintiff, Darcy Solomon, on his own behalf and on behalf of all individuals similarly situated, moves for approval of the parties' Settlement Agreement attached as Exhibit A and for conditional certification of an FLSA collective action for settlement purposes. Plaintiff also moves for an award of attorney's fees. In support of this Motion, Plaintiff files the following memorandum of law.

I.

Introduction

Plaintiff alleges that Defendants violated the Fair Labor Standards Act, 29 U.S.C.§§201, *et seq*. ("FLSA") and California law by failing to pay him and other class members overtime for all hours worked over forty each week. *See* D.E. 54. Plaintiff claims that he and all Consultants who worked for Defendants during the Class Period, as that term is defined in the Settlement Agreement, were improperly classified as independent contractors under the FLSA and California law and were only paid their straight hourly rate for overtime hours worked.[2] Defendants, in turn, maintain that Consultants have been properly classified as independent contractors under the FLSA and California law. As a result, Defendants maintain that they have not violated the FLSA or California law and are not liable in any manner to Plaintiff or to other Consultants.

The parties engaged in months of informal discovery and discussions, including the exchange of detailed information of each class member, legal research and other requested information. The parties then engaged in settlement negotiations that lasted weeks before a final settlement was reached. The parties believe that the terms of the proposed settlement, which are summarized below, are fair and should be approved. The settlement grants significant relief to the Plaintiff and other Consultants, provides an appropriately limited release in favor of the

---

[2] Unless otherwise defined in this Memorandum, the capitalized terms used here have the same meaning as in the Settlement Agreement attached as Exhibit A.

Defendants, and the total settlement amount is properly discounted to account for the Plaintiff's probability of success.

In this memorandum, Plaintiff summarizes the significant terms of the parties' agreement; describes the procedure for approval of a collective action settlement and the legal principles governing the approval of a settlement in a collective action; and applies these principles to show why this proposed settlement is fair and reasonable, and should be approved.

## II.

## Summary of the Settlement Agreement

Under the Settlement Agreement, the parties agree to certify a collective action for settlement purposes under the FLSA and send notice to all persons who worked as Consultants for Defendants during a defined period; pay settlement awards to all members of the Potential Plaintiff Class who opt to join this lawsuit; provide releases in favor of Defendants limited to claims raised or that follow directly from the allegations raised in this case; allow Plaintiff's counsel to seek approval of attorneys' fees and costs up to an agreed limit; and allow Plaintiff to seek a limited service award.

A.    Conditional certification for settlement purposes

The parties ask the Court to conditionally certify for settlement purposes a collective action pursuant to Section 216(b) of the FLSA. The group who would be provided notice and an opportunity to join this lawsuit, defined in the Settlement Agreement as the "Potential Plaintiff Class," is composed of: all Consultants who worked for Defendants in California from May 14, 2014 through the date the Court approves the settlement who were not paid premium pay for overtime hours.

The conditional certification of a collective action under the FLSA for settlement purposes would allow the parties to send a Court-approved notice to all

individuals who fall within the definition of the Potential Plaintiff Class. The proposed Notice is attached as Exhibit A to the Settlement Agreement.) Along with the Court-approved notice, individuals who fall within the definition of the Potential Plaintiff Class will receive a form to complete and return to the administrator to join the settlement. Those individuals who timely complete and return the consent form will have joined this Lawsuit, would be part of the settlement and would be entitled to their settlement payment set forth in Exhibit B to the Settlement Agreement. As explained in more detail below, there are no due process concerns because, under the opt-in FLSA settlement process, only those who affirmatively agree to join the lawsuit would be bound by the settlement. If a Consultant chooses not to accept the payment, then that Consultant loses no rights and is free to pursue his or her individual claim, if desired, as he or she sees fit.

      B.    <u>Amount of the settlement</u>

          i.    <u>Amount of fund and individual awards</u>

Defendants have agreed to create a fund of Six Hundred Twenty-Five Thousand Dollars ($625,000.00) (defined in the Settlement Agreement as the "Maximum Settlement Amount"). Out of the Maximum Settlement Amount, Defendants agrees to pay all payments to the Potential Plaintiff Class (including all payments for unpaid overtime, and any wages, reimbursements, and penalties); a service award to Plaintiff; attorneys' fees; costs and expenses, including all costs and expenses of administration; all settlement payments; payments to settle Private Attorney General Act ("PAGA") claims under California law; and employee-paid withholding and payroll taxes (including state and federal income taxes, social security contributions, and unemployment taxes).

The Maximum Settlement Amount does not include the employer-paid withholding and payroll taxes (including federal and state income taxes, social

1  security contributions, and unemployment taxes) which will be paid separately by

2  Defendants.

3      To calculate each Potential Class Member's share of the settlement listed on

4  Exhibit B to the Settlement Agreement, Plaintiffs' Counsel first calculated the

5  "Potential Gross Individual Settlement Proceeds" by subtracting from the

6  Maximum Settlement Amount the following amounts: Twenty-five percent (25%)

7  of the Maximum Settlement Amount for attorneys' fees and costs, and $2,500.00

8  for the service award.  Each Potential Class Member's "Individual Settlement

9  Award" is based on a pro rata allocation of the Potential Gross Individual

10 Settlement Proceeds, taking into consideration the premium overtime

11 compensation and penalties allegedly owed to each Potential Class Member during

12 the Class Period as a percentage of the total alleged damages sought by the total

13 Class during the Class Period.  The amount of each Plaintiff and Potential Class

14 Members' Individual Award was calculated based on that individual's rate of pay

15 and the number of overtime hours worked during the Class Period.

16     The settlement checks to Consultants who join the settlement will also

17 include an additional payment to settle PAGA claims under California law.  PAGA

18 authorizes aggrieved employees to file lawsuits to recover civil penalties on behalf

19 of themselves, other employees, and the State of California for Labor Code

20 violations.  As required by California Labor Code § 2699(i), 75% of the Total

21 PAGA Payment will be paid to the State of California's Labor and Workforce

22 Development Agency in the manner set forth under California law.  The remaining

23 25% of the Total PAGA Payment will be paid to the Consultants and will be in

24 addition to each Consultant's Individual Settlement Award and will be made on a

25 pro rata basis in the same manner as the share of the Gross Individual Settlement

26 Proceeds is allocated among the Settlement Class Members.

27

28

Each Potential Class Member will receive a settlement check in the amount of that Potential Class Member's Individual Settlement Award plus their share of the PAGA payment as explained on Exhibit B to the Settlement Agreement. Any portion of the Potential Gross Individual Settlement Proceeds that is not claimed in a timely manner by the Potential Class Members will be returned by the Administrator to Defendants.

ii.    Attorneys' fees, costs, and service award

In addition to the money that is allocated to pay the Settlement Class Members, Defendants do not oppose Plaintiff's request for an award of attorneys' fees and reimbursement of expenses up to a maximum of 25% of the Maximum Settlement Amount. Defendants do not oppose Plaintiff's request for approval of a service award of Two Thousand Five Hundred Dollars ($2,500.00). The service award is in recognition of the time and effort Plaintiff spent aiding in the investigation and development of the claims asserted by Plaintiff and on behalf of other Consultants. If approved, the service award will be paid from the Maximum Settlement Amount, but will be in addition to the individual settlement share otherwise being apportioned to Plaintiff.

C.    Releases

If the Settlement Agreement is approved, all Settlement Class Members (that is, all individuals who voluntarily choose to join the action and accept this settlement) will release all claims that relate to the alleged misclassification of Consultants as independent contractors, including claims for failure to pay overtime under the FLSA and under applicable California law. The settlement, once approved, will also release actual or potential PAGA claims for Plaintiff and all Consultants. Because this is a settlement agreement under the FLSA, and the parties are not asking for a settlement under Rule 23 of the Federal Rules of Civil

Procedure, there are no absent class members.    Consequently, only those
individuals who actually consent to join the lawsuit will release any claim.

III.

Procedure and Governing Law for Approval of Settlement Agreement

FLSA collective action settlement agreements require judicial approval.
*Gonzalez v. Fallanghina, LLC,* 2017 WL 1374582, *2 (N.D. Cal. April 17, 2017).
"When considering a motion for approval of … an FLSA collective action the
Court must perform the threshold task of certifying the class or collective."
*Thompson v. Costco Wholesale Corporation*, 2017 WL 3840342, *2 (S.D. Cal.
Sept. 1, 2017) (citing *Millan v. Cascade Water Servs. Inc.*, 310 F.R.D. 593, 602-
607 (E.D. Cal. 2015)). "However, "a Court has a considerably less stringent
obligation to ensure fairness of the settlement in an FLSA collective action than a
Rule 23 action because parties who do not opt in are not bound the settlement.""
*Id.*, quoting *Millan*, 310 F.R.D. at 607.

To review a proposed FLSA collective settlement, district courts in this
circuit have stated:

> Most courts in this circuit, however, first consider whether the named
> plaintiffs are "similarly situated" to the putative class members within the
> meaning of 29 U.S.C. § 216(b) (providing that an aggrieved employee may
> bring a collective action under the FLSA on behalf of himself and "other
> employees similarly situated"). If the collective action members are
> similarly situated, most courts then evaluate the settlement under the
> standard established by the Eleventh Circuit, which requires the settlement
> to constitute "a fair and reasonable resolution of a bona fide dispute over
> FLSA provisions." *Lynn's Food Stores* [*v. U.S. Dep't of Labor*, 679 F.2d
> 1350, 1355 (11th Cir. 1982)].

*Otey v. CrowdFlower, Inc.*, 2015 WL 6091741, *4 (N.D. Cal. Oct. 16, 2015). "A bona fide dispute exists when there are legitimate questions about the existence and extent of [the d]efendant's FLSA liability." *Gonzalez*, 2017 WL 1374582 at *2 (internal quotations omitted).

When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). This is particularly true when, as here, the parties are represented by experienced counsel. Indeed, absent fraud and collusion, the court may not only rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough Cty. Hosp. Auth.*, 2000 WL 1682918, at *4 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977)). The settlement in this case was finalized after the parties engaged in protracted negotiations and exchange of voluminous information. As the parties explain in more detail below, this Settlement Agreement is fair and reasonable, and should be approved.

IV.

Agreement Is Fair and Reasonable and Conditional Certification is Appropriate

The Court should approve the Settlement Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount Defendants has agreed to pay is fair and adequate; there is a significant risk to the Plaintiff Class of an adverse judgment on the merits or whether the case should proceed as a collective action; the Plaintiff Class will receive adequate notice sufficient for each potential opt-in to assess his or her rights; the members of the Plaintiff Class are sufficiently similar for *conditional* certification for settlement purposes; and the amount of fees, costs and service award requested are

in line with sums previously awarded in similar cases.  This settlement is particularly fair and reasonable because, unlike a *class* action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it.  As explained more fully below, any potential class member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

A.    Settlement is the product of arm's length negotiations and of a bona fide dispute

The settlement in this case was reached after counsel for the parties had engaged in discovery and exchanged voluminous documents and information and subsequent lengthy negotiations which lasted several weeks.  It is the opinion of counsel for both parties that the settlement is fair, adequate, and reasonable, as well as the Parties who have executed the Settlement Agreement.

The bona fide dispute in this matter primarily centers on whether Plaintiff and the Consultants were properly classified as independent contractors.  Plaintiff claims that the economic reality test used to determine whether a worker is an employee or independent contractor would show that Plaintiff and the Consultants are in fact employees of Defendants, and thus entitled to time and one-half their hourly rates for overtime hours worked.[3]  *See* D.E. 54, ¶¶ 9-36 (summary of Plaintiff's allegations that support a finding that Consultants were employees).  Defendants allege that they classified Consultants, including Plaintiff, as independent contractors correctly and in good faith, and that similar workers within the industry are also classified as independent contractors.  Defendants also claim that any alleged violation was certainly not willful or in bad faith which would avoid a third year of statute of limitations damages under the FLSA and

---

[3] The Parties agree that Plaintiff and the Consultants were all paid by the hour and were paid their same hourly rate for overtime and non-overtime hours.

would also limit Plaintiff's and the Consultants' recovery of liquidated damages and additional penalties under federal and state law.

While each Party vociferously believes their position to be correct regarding the employee v. independent contractor classification, each Party does acknowledge that the issue is by no means "open and shut" for either Party and that a bona fide dispute does exist on this issue and subsequent application of liquidated damages, penalties and a third year of damages under the FLSA.

Finally, the strong likelihood that any recovery would take years also weighs in favor of approval.    Indeed, public policy favors settlement, especially in complex cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("...we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation").  Plaintiff's claims are not likely to be decided until after cross-motions for summary judgment and perhaps a trial.  Even if they prevail, there would likely be an appeal.  Absent settlement, the Plaintiff Class is not likely to see any recovery for years.  That fact alone weighs strongly in favor of approval.

### B.    Amount to the class is fair

Not only is the settlement the product of an adversarial, non-collusive process, but the amount to be paid to the Plaintiff Class is fair and reasonable.  The average Individual Settlement Award will be almost $23,000, even <u>after</u> the requested attorneys' fees and costs are deducted.

As explained in the Settlement Agreement, the amount going to each class member was determined by applying a formula that took into consideration the premium overtime compensation and penalties allegedly owed to each Potential Class Member during the Class Period.  A Consultant who worked more weeks, more hours or a higher rate of pay during this period would be allocated a

proportionally higher share of the settlement than one who worked fewer work weeks, fewer hours and had a lower rate of pay during the period.

After exchange of full pay and time records for each class member, the Parties exchanged full damage calculations for each class member and then began the negotiation process. Under the FLSA, the maximum overtime allegedly owed to Plaintiff and all Consultants totaled $358,864.07. With full and complete liquidated damages (which Defendants hotly dispute would be applicable even if Plaintiff prevailed on the underlying classification dispute), the total amount claimed would be $717,728.14. Here, the Maximum Settlement Amount provides for relief in the amount of $625,000.00, which is over **87%** of the total potential damages under the FLSA, based on Plaintiff's best day in Court.[4]    The Parties believe that notwithstanding their bona fide disputes over whether Consultants were properly classified as independent contractors, and whether additional liquidated damages, penalties or a third year of statute of limitations damages are proper here, the settlement confers a substantial benefit upon Plaintiff and the Consultants and is fair and reasonable.

Finally, Plaintiff and the Consultants will receive an additional payment to release their PAGA claims. The parties have allocated $7,500.00 to the release of PAGA claims. According to data exchanged between the Parties, there were 184 pay periods encompassed within the PAGA statute of limitations. This would result in a maximum penalty of $18,350 in PAGA penalties. The settlement here would provide relief for over 40% of the potential PAGA penalties and should be approved by this Court. *Cotter v. Lyft, Inc.*, 2016 WL 3561742, at *5 (N.D. Cal.

---

[4] The analysis under California law is similar. Under California law, the maximum overtime damages Plaintiff and the Consultants could claim is $415,340.67. Waiting Penalties and Paycheck penalties under California law (if applicable, which Defendants also hotly dispute for the same reasons as above) would potentially entitle Plaintiff and the Consultants to an additional $487,450.00. Thus, the settlement here would provide for almost 70% of the damages which could possibly be claimed under California law.

June 23, 2016) (approving $1 million PAGA allocation in $27 million class action settlement: 3.7%, which was "quite high").   The consideration for the PAGA release is thus fair and reasonable.

These distribution methods are described in the Settlement Agreement and in the Notice that would be sent to each Potential Class Member.  Only those who voluntarily agree to join the settlement would be bound by it.  As stated in the Notice, any Consultant who has questions about the settlement may contact Plaintiff's counsel.  More importantly, any Consultant who disagrees with the allocation does not have to join the settlement, in which case he or she would not give up any rights, including not releasing any claims.

C.    Due process considerations

Because there are no absent class members in a FLSA collective action, a settlement under the FLSA does not require the exacting due process considerations necessary under a Rule 23 class action settlement.  There is, for example, no need for an objection period or a fairness hearing.  As courts have repeatedly observed, the main reason for this is that only individuals who affirmatively opt-in are bound by the settlement. *See supra.*

In this case, members of the Proposed Plaintiff Class will have to timely complete and return a claim form to join the settlement.  Along with this form, they will receive a Notice, which is part of the Settlement Agreement, that will notify them of the existence and nature of the case, and will advise them how to obtain and read the actual Settlement Agreement or ask questions.  Only if they then independently decide to opt-in will they be bound by the settlement, including receiving the settlement payment and being bound by the release.  Any individual who chooses not to opt-in is not part of the case, and is not bound in any way by the settlement or any release (other than the PAGA release).  That significant difference between a class action settlement and an FLSA settlement weighs in

favor of approval, since the individual class members will have the opportunity to make an informed decision about whether to join the settlement, and will not be bound by it unless they affirmatively choose to do so.

### D. Conditional certification

Per the Settlement Agreement, the Parties ask the Court to conditionally certify a collective action for settlement purposes, and to send Notice (as attached to the Settlement Agreement) to the Proposed Plaintiff Class. Certification of an FLSA collective action is typically a two-step process. *Millan*, 310 F.R.D. at 607. The first step, conditional certification, is considered under a very lenient standard and requires the plaintiff to make a very minimal showing. The second step, triggered by a motion for decertification typically filed after discovery, requires a more exacting review of whether class members (the opt-ins) are actually similarly situated. *Id.*

Given the fact that the individuals who would receive notice all worked for Defendants in the same position, had the same job title, were all paid by the hour, and worked under the same or similar job description, there is sufficient evidence to meet the "lenient" evidentiary showing required to conditionally certify this action for settlement purposes.[5]

"As this Court now considers a settlement agreement, it is clear that Defendant will not seek decertification of the class conditionally certified for purposes of settlement. Absent an argument that the parties are not similarly situated, this Court need not look to the second step at all." *Millan*, 310 F.R.D. at 607.

---

[5] Defendants maintain that but for the settlement, this case should not ultimately be maintained as a collective action, and thus should ultimately be decertified if it is not settled. The fact that the case may (or should) ultimately be decertified does not affect whether it should be conditionally certified, especially for settlement purposes.

1   Here, this Court should conditionally certify this matter as a collective action

2   under the FLSA and approve the proposed settlement as fair and reasonable.

3       E.    Service Award

4   Pursuant to the Settlement Agreement, Plaintiff shall receive a service award

5   in the amount of Two Thousand Five Hundred Dollars ($2,500.00) in addition to

6   his individual settlement share.  This payment is compensation for the time and

7   effort aiding in the investigation and development of the claims asserted and

8   brought on behalf of other Consultants.    Service awards ""are intended to

9   compensate class representatives for work done on behalf of the class, to make up

10  for financial or reputational risk undertaken in bringing the action, and, sometimes,

11  to recognize their willingness to pact as a private attorney general."" *Quezada v.*

12  *Schneider Logistics Transloading & Distribution, Inc.*, 2014 WL 12584436, *11

13  (C.D. Cal. May 12, 2014) (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d

14  948, 959 (9th Cir. 2009).  In *Quezada*, the court found that a $10,000 service award

15  for each of the four named plaintiffs reasonable in a wage and hour settlement,

16  collected cases holding that similar service awards were reasonable and noted the

17  requested service awards totaled less than 1% of the total settlement amount. *Id.* at

18  *11-12. *See also McNeal v. RCM Technologies (USA), Inc.*, 2017 WL 2974918, *

19  1-2 (C.D. Cal. July 12, 2017) (approving $10,000 service awards for two

20  plaintiffs); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 at *11 (E.D. Cal.

21  Oct. 31, 2012) (approving  $15,000 service award to each named plaintiff).  Here,

22  the service award for Plaintiff amounts to 0.4% of the Maximum Settlement

23  Amount and should be approved by this Court.[6]

24      F.    Attorney's Fees and costs

25

26

---

27  [6] Pursuant to this Court's Standing Order for Civil Cases Assigned to Judge John A. Kronstadt [D.E. 11], attached to this Motion is a spreadsheet which details the activities

28  and hours worked by Plaintiff to support the service award. *See* Exhibit B.

Plaintiff requests that the Court award attorneys' fees and litigation costs in the amount of $156,250.00, which is 25% of the Maximum Settlement Amount per the terms of the Settlement Agreement.    In common fund cases, using the percentage of the fund method, 25% of the total settlement amount is the benchmark. *Van Wingerden v. Cadiz, Inc.*, 2017 WL 5565263, *10 (C.D. Cal. Feb. 8, 2017) (citing *Paul, Johnson, Aiston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989)); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).    Adhering to the benchmark established by the Ninth Circuit, Plaintiff's Counsel seeks $156,250 in fees and costs which equals 25% of the Maximum Settlement Amount.

    i.    Fees Expended

Pursuant to this Court's Standing Order for Civil Cases [D.E. 11, p. 17], Plaintiff's Counsel has prepared the required charts showing the attorneys' fees expended on this matter. *See* Exhibit C.  These charts show that in total, based on the hours worked and hourly rates sought, Plaintiff's Counsel has currently expended $111,902.50 in attorneys' fees in this matter.  Plaintiff's Counsel was able to efficiently and without judicial intervention, prosecute this matter and secure a sizable recovery for Plaintiff and the other Consultants as described above. Additionally, Plaintiff's Counsel expects to spend another 40 hours on this matter subsequent to the Order approving this resolution assisting in any administration issues over the eight month payment plan, answering any questions Consultants may have, or handling any other issue which may arise for Plaintiff or any other Consultant.  Thus, in total, Plaintiff's Counsel will expend approximately $141,902.50 in fees in prosecuting this matter.

    ii.    Hourly Rates

"In determining a reasonable hourly rate, "[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that

the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'"" *Van Wingerden*, 2017 WL 5565263 at *12 (quoting *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)).

In this market, for experienced counsel in wage-and-hour class/collective actions matters, $750 per hour for Mr. Morgan and Mr. Frisch; and $850 per hour for Mr. Desai are reasonable hourly rates. Mr. Desai, one of Plaintiff's counsel here, has had a rate of $750 per hour approved numerous times in the greater Los Angeles area the last few years and is an experienced wage-and-hour practitioner. *See* Declaration of Aashish Y. Desai attached as Exhibit D. *See Aguirre v. Genesis Logistics,* SACV 12-00687 (C.D. Cal. April 7, 2014) (Judge Selna on *disputed Motion* formally ruled that Mr. Desai's $750/hr rate is reasonable for the southern California market); *Mutch v. AYCO Company*, Case No. 30-2012-00587900 (Orange County Superior Court May 12, 2014) (Judge Andler *specifically approving* Mr. Desai's $750/hr rate at final approval); *Correa v. Sensa Products, LLC*, Case No. BC476808 (LA Superior Court Nov. 7, 2013) (Judge Mohr approving class settlement and cross-checking fee using in part $750/hr rate for Mr. Desai); *Cardenas v. McLane Foodservice, Inc.*, SACV 10-473 (C.D. Cal. Jan. 30, 2012) (Judge Carter approving class settlement and cross-checking fees using in part $750/hr rate for Mr. Desai); *Bravo De Rueda v. Alta Home Care*, Case No. 30-2011-00506932 (Orange County Superior Court Sept. 7, 2013) (Judge Perk approving class settlement and cross-checking fee using in part $750/hr rate for Mr. Desai); and *Gharamsini v. Smile Brands, Inc.*, Case No. 30-2012-0061-9560 (Orange County Superior Court May 28, 2013) (Judge Wieben Stock approving class settlement and cross-checking fee using in part $750/hr rate for Mr. Desai).[7]

---

[7] *See also Rutti v. Lojack Corp., Inc.*, 2012 WL 3151077, *11 (C.D. Cal. July 31, 2012) (approving partner level rate in wage-and-hour matter at $750 per hour).

In addition to Mr. Desai, Mr. Morgan and Mr. Frisch are experienced wage and hour practitioners and are partners in the national law firm of Morgan & Morgan, P.A. *See* Declaration of C. Ryan Morgan attached as Exhibit E. This declaration details the experience of Mr. Morgan and Mr. Frisch and also outlines previous wage-and-hour class and collective actions in which they have successfully prosecuted. As stated in the declaration, Plaintiff's Counsel undertook this matter on a completely contingent basis with no assurance that any attorneys' fees could be recovered and warrants a higher hourly rate.

Thus, based on the experience and work product here of Plaintiff's Counsel, as well as prior orders in this district and the greater Los Angeles area approving the rates sough (*see supra*), this Court should approve the requested hourly rates for the attorneys involved here.

### iii. Costs

Plaintiff's Counsel has expended $1,194.04 in costs in this matter, mostly consisting of filing fees, pro hac vice fees, service of process fees and a fee to the Labor and Workforce Development Agency. *See* Ex. A to Morgan's Declaration and Ex. B to Desai's Declaration. The rest of the minimal costs were printing, postage and long-distance telephone charges. This Court should approve these costs as reasonable. Given the minimal nature of the costs, these costs are included within the 25% fee requested here. Thus, after costs are deducted, the actual fee sought is $155,055.96.

### iv. Multiplier

Here, based on the reasonable attorneys' fees expended above, the requested fee represents a multiplier of approximately 1.39 of the currently expended fees. This Court has previously approved a multiplier in the similar range approximately one year ago wherein plaintiff's counsel had undertaken a matter on a contingent basis with no guarantee of recovery and which contained numerous risks such as

here.  *Van Wingerden*, 2017 WL 5565263 at *13 ("In light of these factors, the multiplier of 1.63 is reasonable. Therefore, the 25% benchmark is appropriate.") (citing *Vizcaino*, 290 F.3d at 1051 (approving a 3.65 multiplier on lodestar); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 1010 (multiplier of 1.7); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04–2147–PHX–JAT, 2012 WL 1378677, at *1, 7 (D. Ariz. Apr. 20, 2012) (multiplier of 1.74 in class action settlement of claims that Defendants violated Section 10(b) of the Exchange Act and 10(b)(5) of the Securities and Exchange Commission); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (stating that "[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation" and upholding a multiplier of 3.6)).    Therefore, this Court should find the 1.39 multiplier sough here reasonable and should approve Plaintiff's Counsel's requested fees and costs at the 25% benchmark of the Maximum Settlement Amount which would amount to $156,250 in attorneys' fees and costs.

V.

Conclusion

In sum, the Settlement Agreement is a fair and reasonable resolution of the disputed issues, and Plaintiff requests the Court to:  (i) conditionally certify this case for settlement purposes as a collective action under Section 216(b) of the FLSA; (ii) approve the Settlement Agreement and its terms; (iii) approve the issuance of Notice (as set forth in Exhibit A to the Settlement Agreement) and subsequent checks to Consultants who join the action; (iv) approve the service award and attorneys' fees and costs requested as reasonable; and (v) dismiss the action with prejudice with the Court to retain jurisdiction enforce the terms of the Settlement Agreement should a subsequent dispute arise between the Parties.

1    Dated:  March 15, 2018                    MORGAN & MORGAN, P.A.

2

3                                              By:  /s/ C. Ryan Morgan

4                                                   C. Ryan Morgan, Esq. (pro hac vice)
                                                   Attorneys for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28